## IN THE CONNECTICUT DISTRICT COURT

## FOR THE UNITED STATES

**Plaintiff: Finney, John Kell,**

**Ex Rel.: Sarah Olivieri**



-vs.-

**Defendants: State of Connecticut-Actors (Judges): Edward Dolan, John L. Carbonneau, Jr.
Susan Connor, Suzanne Caron, Vernon Oliver, Edward J Mullarkey, Lyfshitz, The New
Britain Police Department, Connecticut Child Support Enforcement Agency**

**Individuals acting under State Actors (Law): Attorney Fiedler, Attorney Saurez, Michelle
Thomas, Shirley Thomas, Mignonne Thomas, Damian Thomas, Naomi Thomas, Julio
Olivieri, Hudson Farms,** *Cameron's Auto Towing*

**State of New Jersey-Actors (Judges): Wright, Farber, Critchley, Jr
Andover Municipal Court, Middlesex County Superior Court, NJ Child Support
Enforcement Agency, Department Children Permanent Placement**

Docket No. 3:20-CV00158-JCH
Motion for Discovery, Sanctions,
and Cease and Desist

**TABLE OF CONTENTS**

1.  <u>Santos E. Argueta v. Tami A. Baker;</u> 2016 NY Slip Op 01838 [137 AD3d 1020], N.Y. APP. 2ND Div., 2016

2.  <u>Bhatia v. Debek;</u> 287 Conn. 397, 404-405, 948 A.2d 1009, 1017 (2008)

3.  <u>BOROUGH OF DURYEA, PENNSYLVANIA, ET AL., PETITIONERS v. CHARLES J. GUARNIERI;</u> No. 09–1476 (U.S., 2011)

4.  <u>BRIGHT v. GALLIA COUNTY, OHIO;</u> Nos. 13-3451, 13-3907, 753 F.3d 639 (6th Cir., 2014)

5.  <u>DeLaurentis v. New Haven;</u> 220 Conn. 225, 250, 597 A.2d 807, 820 (1991)

6.  <u>FRANCHISE TAX BOARD OF CALIFORNIA v. HYATT;</u> CERTIORARI TO THE SUPREME COURT OF NEVADA No. 17–1299. (NEV., 2019)

7.  <u>Opiyo Joseph Otiiti v. M/S M. Oyet & Co., Mumtaz Kassam & Co., Dr. Mumtaz Kassam, Oyet Moses, Margaret Mutonyi;</u> No. 0019 *(HIGH COURT OF UGANDA* SITTING AT GULU, 2016)

8.  <u>San Filippo v. Bongiovanni;</u> 30 F.3d 424 (3d Cir. 1994)

9.  <u>Scapin v. Scapin;</u>  9530 (Conn. Super. Ct. 1997)

10. <u>Schaefer v. O. K. Tool Co., Inc.;</u> 110 Conn. 528, 532-533, 148 A. 330, 332-333 (1930)

11. <u>Eric P. Sousa v. Donna M. Sousa;</u> (SC 19504) (CONN., 2016)

12. <u>State of Connecticut v. Salvatore Caracoglia;</u> (AC 22607) (Conn. App., 2003)

13. <u>Troxel v. Granville;</u> 530 U.S. 57 (2000)

14. <u>United States v. DeJesus;</u> 116 F. Supp. 2d 256 (D.P.R. 2000)

15. <u>United States v. Tonry;</u> 605 F.2d 144 (5th Cir. 1979)

16. <u>Zeller v. Consolini;</u> 235 Conn. 417, 424, 666 A.2d 64, 67 (1995)

**Articles**

1.  <u>"AN ACT CONCERNING REGISTRATION FEES FOR COUNSEL AND GUARDIANS AD LITEM FOR MINOR CHILDREN AND OTHER REQUIREMENTS FOR CERTAIN FAMILY RELATIONS MATTERS.;"</u> General Assembly; Raised Bill No. 1049, JANUARY SESSION, 2017 LCO No. 6106

2.  <u>Judging without Impunity: On the Criminal Responsibility of Authoritarian Judges;</u> Bergen Journal of Criminal Law and Criminal Justice • Volume 4, Issue 1, 2016, pp. 125-149

3.  <u>"NONLAWYER LEGAL ASSISTANCE AND ACCESS TO JUSTICE;"</u> Fordham Law Review Volume 67 Issue 5, Article 19 1999, Alex J. Hurder*

4.  <u>Protecting the Rights of Parents and Prospective Parents with Disabilities: Technical Assistance for State and Local Child Welfare Agencies and Courts under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;"</u> *U.S. Department of Health And Human Services,* Office for Civil Rights Administration for Children and Families, *U.S. Department of Justice,* Civil Rights Division, Disability Rights Section

**Federal Rules and Statutes**

1.      **18 U.S. Code § 2511**- Interception and disclosure of wire, oral, or electronic communications prohibited

2.      **18 U.S. Code 3563**

3.      **18 U.S. Code 3651**

4.      **20 U.S. Code 1234.** Office of Administrative Judges

5.      **F.R.C.P. Rule 37.** Failure to Make Disclosures or to Cooperate in Discovery; Sanctions

Pursuant to 20 U.S.C. § 1234- Office of Administrative Law Judges, the Plaintiffs, Finney, John

K and Sarah Olivieri; request that this motion[1] regarding Discovery, a Cease and Desist Order;

and Sanctions be granted.[2]

## FACTS

1.  The Plaintiff is not able to secure work since the commencement of his suits against those

involved in the enterprise.

2.  The divestment of jurisdiction began when Judge Dolan stated he would not rule on the

Contempt motion before the court. This argument between the court and the Plaintiff was relived

when Ms. Olivieri was forced to have him recused and with other judges within the New Britain

Superior Court and Sussex County Superior Court as well as in a child support enforcement

courts of both Connecticut and New Jersey.

---

[1] **Franchise Tax Board Of California v. Hyatt;** CERTIORARI TO THE SUPREME COURT OF NEVADA No. 17–1299. (NEV., 2019): "Held: Nevada v. Hall is overruled; States retain their sovereign immunity from private suits brought in courts of other States."

[2] "**(a)** ESTABLISHMENT; DUTIES ... (1) recovery of funds hearings pursuant to section 1234a of this title, (2) withholding hearings pursuant to section 1234d of this title, (3) cease and desist hearings pursuant to section 1234e of this title ... **(e)** REVIEW AND EVIDENTIARY FUNCTIONS The judge shall review and may require that evidence be taken on the sufficiency of the preliminary departmental determination as set forth in section 1234a of this title.**(g)** DISCOVERY; SCOPE, TIME, ETC.; ISSUE AND ENFORCEMENT OF SUBPOENAS **(1)** [W]here the judge determines that the discovered information is likely to elicit relevant information with respect to an issue in the case, is not sought primarily for the purposes of delay or harassment, and would serve the ends of justice, the judge may order a party to— **(A)** produce relevant documents; **(B)** answer written interrogatories that inquire into relevant matters; and **(C)** have depositions taken. ... The judge shall set a time limit of 90 days on the discovery period. The judge may extend this period for good cause shown. At the request of any party, the judge may establish a specific schedule for the conduct of discovery. **(2)** In order to carry out the provisions of subsections (f)(1) and (g)(1), the judge is authorized to issue subpoenas and apply to the appropriate court of the United States for enforcement of a subpoena."

3.  The divestment in jurisdiction was to make the Plaintiff into a terrorist and Ms. Olivieri an individual who was supporting terrorist activities. At no point are these within the jurisdiction of a family court or state court.

4.  The court furthered lack subject matter jurisdiction when charging the Plaintiff with crimes he did not commit, was forced to seek more psychologists for a custody matter. Failure to respond should be shown as a validation of the facts from her perspective.

5.  The Defendants are equally and severely liable to Ms. Olivieri because the Defendant engaged in an assault onto her to retaliate on Mr. Finney.

6.  The state of New Jersey has no subject matter jurisdiction, and because the matter evolves out of this court no Qualified Immunity from a court can be established. The Plaintiff spoke with Minnie Gonzalez and stated people don't have immunity.

7.  The rulings made in the State court were aimed at confusing the Plaintiff and can be Ms. Olivieri they were done in Malice; just as Ms. Olivieri stated.

8.  Dr. Zahedi's statement spoken from his counsel Atty. O'Hara, regarding drugging the Plaintiff "under no uncertain terms" was designed to decrease the level of rehensibility and admit that was his purpose.

9.  Sussex County Superior Court is refusing to give the Plaintiff a price for the manufacturing of THESE transcripts. The position of  with whom the Plaintiff spoke with on multiple occasions found the matter to be quite funny.

10. The blatant allowance of a lawyer to withhold evidence which is a compromised picture amongst other things until the last minute and withhold the Authentication timestamp nor could they discuss its authentication because the barred the maker of the pictures, 2 children that

because the matter of school transfer would have been brought up shows a manufactured court

proceeding, a sham court.

   11. The smug and comical position of the defendant litigants is shown by Miss Thomas

position that she will not be coming to court on multiple occasions until she was given a "Royal

invitation." Other defendants can be shown in the transcripts and court documents

### DISCOVERY

   1. The judges in Connecticut courts spoliated[3] both parties cases,[4] barred the Plaintiff from

arguing, in the dissolution of marriage which was subsequent to the child custody;[5] along with,

---

[3] **"Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions"** (e)
FAILURE TO PRESERVE ELECTRONICALLY STORED INFORMATION. If electronically
stored information that should have been preserved in the anticipation or conduct of litigation is
lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or
replaced through additional discovery, the court: (1) upon finding prejudice to another party from
loss of the information, may order measures no greater than necessary to cure the prejudice; or
(2) only upon finding that the party acted with the intent to deprive another party of the
information's use in the litigation may: (A) presume that the lost information was unfavorable to
the party; or (B) dismiss the action or enter a default judgment.

[4] **DeLaurentis v. New Haven;** 220 Conn. 225, 250, 597 A.2d 807, 820 (1991): "Courts have
taken three approaches to the 'termination' requirement. The first, and most rigid, requires that
the action have gone to judgment resulting in a verdict of acquittal, in the criminal context, or no
liability, in the civil context . . . The third approach, while nominally adhering to the 'favorable
termination' requirement, in the sense that any outcome other than a finding of guilt or liability is
favorable to the accused party, permits a malicious prosecution or vexatious suit action whenever
the underlying proceeding was abandoned or withdrawn without consideration, that is,
withdrawn without either a plea bargain or a settlement favoring the party originating the
action."

[5] **Eric P. Sousa v. Donna M. Sousa;** (SC 19504) (CONN., 2016): "[T]hat the restriction of
postjudgment modification … § 46b-86 (a) is in fact jurisdictional in nature… **Because it was
not entirely obvious that Judge Resha lacked jurisdiction …** namely, ''whether the
complaining party had the opportunity to litigate … [t]he fact that a direct jurisdictional
challenge might then have been appropriate is not, however, sufficient to vindicate a subsequent
collateral attack upon the consent judgment''), with **Arseniadis v. Arseniadis, 2 Conn. App.
239, 244, 477 A.2d 152 (1984)** (noting ''[t]he important factor in this case is that the appeal is a

in his official capacity, and assisting the Defendants, became a complaining witness. The plaintiff request that all court documents in notes be turned over subpoenaing the people who may be third-party but are involved

2. Ms. Thomas stated it was not her fault the Plaintiff did not receive proper service of motions nor of commencement of suit, this pattern is shown in Ms. Olivieri's matter.[6]

3. Ms. Thomas admitted to the Sussex County Superior Court that the Plaintiff did go to Hudson Farms and talked to the person in charge and informed them. Here the Plaintiff objected to the child being taken out of the country which caused a uproar between Ms. Thomas and her mother. This is found in the transcripts within Sussex County Superior Court.

---

direct attack on the judgment made shortly after the judgment was rendered''). …dissolution settlement because parties agreed to judgment and failed to contest jurisdiction at that time); Vogel v. Vogel, supra, 178 Conn. 363 (rejecting collateral challenge[).]''

[6] **Borough of Duryea, Pennsylvania, Et Al. v. Charles J. Guarnieri;** No. 09–1476 (U.S., 2011): "JUSTICE KENNEDY delivered the opinion of the court. Among other rights essential to freedom, the First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U. S. Const., Amdt. 1. This case concerns the extent of the protection, if any, that the Petition Clause grants public employees in routine disputes with government employers. Petitions are a form of expression, and employees who invoke the Petition Clause in most cases could invoke as well the Speech Clause of the First Amendment. To show that an employer interfered with rights under the Speech Clause, the employee, as a general rule, must show that his speech was on a matter of public concern, as that term is defined in the precedents of this and other courts. Here the issue is whether that test applies when the employee invokes the Petition Clause. Alone among the Courts of Appeals to have addressed the issue, the Court of Appeals for the Third Circuit has held that the public concern test does not limit Petition Clause claims by public employees. For the reasons stated below, this conclusion is incorrect. … Rejecting that view, the Court of Appeals here affirmed the award of compensatory damages, although it found insufficient evidence to sustain the award of punitive damages. The Court of Appeals concluded that "'a public employee who has petitioned the government through a formal mechanism such as the filing of a lawsuit or grievance is protected under the Petition Clause from retaliation for that activity, even if the petition concerns a matter of solely private concern.'" 364 Fed. Appx. 749, 753 (CA3 2010) (quoting Foraker v. Chaffinch, 501 F. 3d 231, 236 (CA3 2007)). The decision of the Court of Appeals was consistent with the rule adopted and explained by that court in San Filippo v. Bongiovanni, 30 F. 3d 424, 442 (1994). This Court granted certiorari to resolve the conflict in the Courts of Appeals. 562 U. S. ___ (2010).

4.   The majority of the hearing involving Ms. Thomas were conducted in the absence of the Plaintiff. The fact that her evidence (sworn statements) are false, allegations are false, provide adequate reason to subpoena the transcripts from both courts.[7]

5.   The transcripts involving Ms. Olivieri matters prove the court pushed the defense to target Mr. Finney and coerce a situation between the Plaintiffs so to later use against them.[8]

6.   Plaintiff request subpoenas to all the witnesses and mental health professionals for the honest testimony and proper cross-examination of their analysis. As they have concluded that there is no reason why the plaintiffs have been denied custody of their children. Not only does her efforts to prove the Plaintiffs' innocence, the Child therapist, Mr. Christopher Albini; Conn. DYFS, Ms. Danielle Desrochier; have expressed their frustration with the New Britain Superior Court, specifically Judge Edward Dolan. Have also agreed that the discrimination comes by economical standing. This justifies granting subpoenas to the quasi-judicial entities involved

---

[7] **Opiyo Joseph Otiiti v. M/S M. Oyet & Co., Mumtaz Kassam & Co., Dr. Mumtaz Kassam, Oyet Moses, Margaret Mutonyi;** No. 0019 *(HIGH COURT OF UGANDA* SITTING AT GULU, 2016): "It was further held in that case that protection may be afforded even if the act was prompted by malicious or corrupt reasons, "flawed by the commission of grave procedural errors," or taken in excess, but not in clear absence, of jurisdiction. The doctrine of absolute judicial immunity will therefore protect a judge against liability for a given act if two conditions are satisfied. First, the act must not have been taken in the "clear absence of all jurisdiction" and second, the act must be a "judicial act." Actions in excess of, but not in clear absence of, jurisdiction too are covered by that immunity. Even "grave procedural errors," are not enough to deprive a judge of all jurisdiction. Malice and corruption are similarly insufficient. The factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e. whether they dealt with the judge in his or her judicial capacity. In the Vanderwater case, the prosecutorial acts were taken under colour of state law but were not judicial in nature.

[8] **Zeller v. Consolini;** 235 Conn. 417, 424, 666 A.2d 64, 67 (1995): "In suits for vexatious litigation, it is recognized to be sound policy to require the plaintiff to allege that prior litigation terminated in his favor. This requirement serves to discourage unfounded litigation without impairing the presentation of honest but uncertain causes of action to the courts."

7.   Attorney Coughlin of Children's Law Center is the Guardian Ad Litem for Ms. Olivieri's

matter. His testimony is needed to show[9] the facts found prove a complete indifference to the

proper administration of Justice. In his candor and good faith, we believe his act which violated

his duty to relinquish his "bill of service" untimely was deliberate.[10] This can be demonstrated by

the contradictions in his written recommendations and his verbal dissemination of the fax the

showing why the garden that lead hymns written recommendation is different was because they

were unaware of the fact that the plaintiff had returned in support of Miss olivieri they thought

he was still incarcerated.

8.   The Court waived all immunity for giving direction to the Defendant parents to file a

sham cause of action and in doing so forced the victim to plea guilty under Alford and subject

---

[9] **Bhatia v. Debek;** 287 Conn. 397, 404-405, 948 A.2d 1009, 1017 (2008): "An action for
malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant
initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal
proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable
cause; and (4) the defendant acted with malice, primarily for a purpose other than that of
bringing an offender to justice.' McHale v. W.B.S. Corp., 187 Conn. 444, 447, 446 A.2d 815
(1982) . . . the requirement that the plaintiff establish that the defendant initiated or procured the
institution of criminal proceedings against him, is the only element that distinguishes the tort of
malicious prosecution from the tort of vexatious litigation . . . Although the required showing for
both torts essentially is the same, there is a slight difference in that a plaintiff in a malicious
prosecution action must show initiation of the proceedings by the defendant."

[10] **"An Act Concerning Registration Fees For Counsel And Guardians Ad Litem For Minor
Children And Other Requirement For Certain Family Relations Matters;"** General
Assembly; Raised Bill No. 1049, JANUARY SESSION, 2017 LCO No. 6106: "Section 46b-12,
Section 1. (D) if applicable, all provisions related to the calculation of fees on a sliding-scale
basis; and (5) a proposed schedule of periodic court review of the work undertaken by such
counsel or guardian ad litem and the fees charged by such counsel or guardian ad litem. ... Not
later than thirty days after the entry of a final judgment in a family relations matter involving
counsel or a guardian ad litem for a minor child, such counsel or guardian ad litem shall file with
the court an affidavit that sets forth (A) the case name, (B) the case docket number, and (C) the
hourly fee charged, total number of hours billed, expenses billed and the total amount charged by
such counsel or guardian ad litem.

him to punishment, thus making it easier for Attorney Saurez and the court to retaliate on the Ms. Olivieri.

### Sanctions

9.  Because this matter has gone through the trial and Appellate courts multiple times the Court and the defendants as well as their lawyers have no defense they should be barred from depositions as well.[11] The plaintiffs seek attorney fees for failing to comply with discovery. This can be proved through the obtainment of unredacted transcripts.

10. A mandatory prison time for everyone involved in this Enterprise should have maximum penalties for they were against the law and they deserve what they dish out. In the absence of jurisdiction where criminal judges were Prosecuting on civil matters and civil court judges were conducting matters that were pursuant to the federal courts regarding terrorism.

---

[11] **"An Act Concerning Registration Fees For Counsel And Guardians Ad Litem For Minor Children And Other Requirement For Certain Family Relations Matters:"** General Assembly; Raised Bill No. 1049, JANUARY SESSION, 2017 LCO No. 6106: "Sec. 8. Section 46b-66 (a) (1) **In any case under this chapter where the parties have submitted to the court an agreement concerning the [custody, care, education, visitation,] maintenance or support of any of their children or concerning alimony or the disposition of property, the court shall inquire into the financial resources and actual needs of the spouses [and their respective fitness to have physical custody of or rights of visitation with any minor child, in order] to determine whether the agreement of the spouses is fair and equitable under all the circumstances.** If the court finds the agreement fair and equitable, it shall become part of the court file, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. If the court finds the agreement is not fair and equitable, it shall make such orders as to finances [and custody] as the circumstances require. (2) …, and if the agreement is in writing, it shall be incorporated by reference into the order or decree of the court. (c) The provisions of chapter 909 shall be applicable to any agreement to arbitrate in an action for dissolution of marriage under this chapter, provided (1) an arbitration pursuant to such agreement may proceed only after the court has made a thorough inquiry and is satisfied that (A) each party entered into such agreement voluntarily and without coercion, and (B) such agreement is fair and equitable under the circumstances, and (2) such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody."

11. Dr. Zahedi's state judicial proceedings attempted to white wash the evaluation.[12] The words of his attorney were incomplete and like the matter with Cameron's these direct pieces evidence (telephonic communication)  proved guilt and they were deliberately suppressed.

**Cease and Desist**

12. The causation that led to Mr. Finney being imprisoned is invalid which was stated by the prosecutor. Mr. Finney's action does not violate the breach of peace laws either.[13]

---

[12] **"An Act Concerning Registration Fees For Counsel And Guardians Ad Litem For Minor Children And Other Requirement For Certain Family Relations Matters;"** General Assembly; Raised Bill No. 1049, JANUARY SESSION, 2017 LCO No. 6106: "Sec. 5. Section 46b-56 (b) … welfare, including, but not limited to, matters pertaining to education, medical care and emotional, moral, social and religious development; (3) the award of sole custody to one parent with appropriate parenting time for the noncustodial parent where sole custody is in the best interests of the child; or (4) any other custody arrangements as the court may determine to be in the best interests of the child. ... (g) A parent not granted custody of a minor child shall not be denied the right of access to the academic, medical, hospital or other health records of such minor child, unless otherwise ordered by the court for good cause shown. (i) As part of a decision concerning custody or visitation, the court may order either parent or both of the parents and any child of such parents to participate in counseling and drug or alcohol screening, provided such participation is in the best interests of the child. (k) In any controversy before the court as to the custody or care of a minor child, an allegation that a parent has knowingly made a false statement to the court relating to the care and custody of the minor child may be referred by the court to the Chief State's Attorney for purposes of a criminal investigation. Any parent who knowingly makes a false statement to the court relating to the care and custody of a minor child may be fined not more than two thousand dollars or imprisoned not more than one year, or both.

[13] **Judging without Impunity: On the Criminal Responsibility of Authoritarian Judges;** Bergen Journal of Criminal Law and Criminal Justice • Volume 4, Issue 1, 2016, pp. 125-149: "Take the example of the 'euthanasia' programme of Nazi Germany that killed more than seventy thousand people. Most would not hesitate in characterizing this as a programme of extermination, and call for the punishment of those taking part in it. The same characteristic is not often used to describe the institution of special and military courts that killed more than thirty-five thousand people, many of them between 1941 and 1945. Reportedly, only one German judge was convicted for this in The Federal Republic of Germany. German courts after the war decided that both doctors and judges were acting illegally. However, whereas doctors were punished, judges could only be punished if they had acted out of malicious motives. In no case did the courts after the war find proof of this…. In many cases, authoritarian regimes restrict themselves to enacting oppressive laws, and leaves it to the courts to enforce these independently. Other authoritarian regimes are not as constrained in dealing with the judiciary.

13. The purpose of the undue delay was to create confusion which violated the necessity to bring substantial justice and finality in a timely manner. This is shown by the burden of proof utilized was improper.[14] To validate the parental termination while still giving both Miss Thomas and Mr. Olivieri opportunities for seeking to acquire child support knowing the supports the violating the rudimentary doctrines of equity and comedy this supports the cease-and-desist order on those that are precluded those that do not rise to the level of scrutiny needed in the hearings, violates due process which was not considered in any higher court.[15]

---

The Soviet authorities were notorious for their show trials and 'telephone justice' where judges were told directly by party official or the procurator how to decide certain cases.52 In its vicious form, this reduced the judges to 'mouthpieces' of the tyrants."

[14] **"An Act Concerning Registration Fees For Counsel And Guardians Ad Litem For Minor Children And Other Requirements For Certain Family Relations Matters;"** General Assembly; Raised Bill No. 1049, JANUARY SESSION, 2017 LCO No. 6106: "Sec. 4. Section 46b-54 (e) [Counsel] (1) Except as provided in subdivision (2) of this subsection, counsel or a guardian ad litem for the minor child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child. … at such other time the court deems appropriate so as to minimize legal fees incurred by the parties due to the participation of such counsel or guardian ad litem in the matter."

[15] **State of Connecticut v. Salvatore Caracoglia;** (AC 22607) (Conn. App., 2003): "General Statutes § 53a-182, stated that ''the predominant intent is to cause what a reasonable person operating under contemporary community standards would consider a disturbance to or impediment of a lawful activity, a deep feeling of vexation or provocation, or a feeling of anxiety prompted by threatened danger or harm.'' State v. Indrisano, supra, 810. Under ''subdivision (1) of § 53a-182 (a) . . . physical fighting, and physically violent, threatening or tumultuous behavior'' rather than mere verbal speech is prohibited. Id., 812. In Szymkiewicz, a case in which the breach of the peace statute, § 53a-181 (a) (1) was at issue, our Supreme Court stated that § 53a-181 (a) (1) ''does not require proof of actual physical conduct on the part of the defendant with a victim,'' and concluded ''that a fair reading of Indrisano indicates that speech can be proscribed not only when accompanied by actual physical conduct, but also when it can be identified as fighting words that portend physical violence.'' State v. Szymkiewicz, supra, 237 Conn. 620. Through those cases, our Supreme Court has concluded that the words ''engaged in fighting or in violent, tumultuous or threatening behavior'' should not reach speech protected by the first amendment. Our Supreme Court stated that ''[s]ubdivision (1) of § 53a-181 (a) proscribes speech that properly can be characterized as fighting words when, under the totality of the circumstances, that speech amounts to 'violent, tumultuous or threatening behavior' that

14. The plaintiff probation officer ordered the plaintiff to seek a psychological evaluation on the basis of child custody. She stated that the reason was because it was a new one and could not be. Disregarded the plaintiff it was already seeking. His own psychiatrist and she was aware. She ordered the plaintiff to go to her psychiatrist.[16]

15. Judge Caron applied deliberately a wrong standard of proof. To change custody which amounted to an abuse of process.[17]

---

portends violence, while subdivision (5) proscribes 'abusive or obscene language.' '' Id., 622. The court also made clear that all forms of fighting words were not necessarily abusive or obscene, and that the court would, ''[w]hen and if a case arises in which the prosecution proceeds under subdivision (5) of § 53a-181 (a) . . . construe 'abusive' and 'obscene' under the particular facts of that case, taking into account, of course, the principle that the legislative language may not be considered as mere surplusage.''

[16] **"An Act Concerning Registration Fees For Counsel And Guardians Ad Litem For Minor Children And Other Requirements For Certain Family Relations Matters;"** General Assembly; Raised Bill No. 1049, JANUARY SESSION, 2017 LCO No. 6106: "Sec. 3. (a) As used in this section, "family relations matter" means a matter set forth in subsection (e) of section 46b-12 of the general statutes, as amended by this act, and "licensed health care provider" (b) In a family relations matter, if a court orders that a parent undergo treatment or an evaluation from a licensed health care provider, the court shall permit the parent to select the licensed health care provider who is to provide such treatment or evaluation. (c) In a family relations matter, if a court orders that a minor child undergo treatment or an evaluation from a licensed health care provider, the court shall permit the parent or legal guardian of such child to select the licensed health care provider who is to provide such treatment or evaluation. ... [A] parent who incurs costs as a result of permitting the child to be treated or evaluated by a licensed health care provider without the express written consent of the other parent shall be solely responsible for paying such costs.

[17] **Opiyo Joseph Otiiti v. M/S M. Oyet & Co., Mumtaz Kassam & Co., Dr. Mumtaz Kassam, Oyet Moses, Margaret Mutonyi;** No. 0019 (HIGH COURT OF UGANDA SITTING AT GULU, 2016): "The litigation privilege is not a license to defame for an advocate who knows the statement to be false, or utters it in reckless disregard of its truth or falsity. Advocates are given an absolute immunity for statements made in the course of judicial proceedings so that they may exercise unfettered judgment in their clients' interest. A statement is privileged only if it has some relation to the proceeding. The absolute privilege applies to any communication a) made in judicial or quasi-judicial proceedings; b) by litigants or other participants authorised by law; c) to achieve the objects of the litigation; and d) and has some connection or logical relation to the action. Whether a defendant is entitled to the privilege is a question of law. The litigation privilege extends to all statements or communications made in connection with the judicial proceeding. The English rule differs slightly from the American rule in that England affords a

16. The prosecutor pointed out that Judge Mullarkey had no pattern or case against the Plaintiff. The example is clear when the Prosecutor told the court the last prior criminal incident of the plaintiff dated back to 2003. The prosecutor did not acknowledge the breach of peace that occurred in 2013, which was dismissed due to Ms. Thomas' testimony to Chief Riley.[18]

17. The Plaintiffs even sought the grievance panel, this was dismissed as untimely; fruitless. There is no record on there dockets, thus giving Christine appearances to these criminal judges.[19] Ms. Olivieri was denied that right because the order didn't reach her (on purpose, as she stated she would appeal this decision) until that became untimely and would have proven to be fruitless,  minus a lawyer. This is directly stated by nearly all administrative personnel.

---

true, absolute privilege without regard to the relevancy of the statements to the subject matter of the proceedings (see Munster v. Lamb, [1883] 11 Q.B.D. 588).

[18] **Opiyo Joseph Otiiti v. M/S M. Oyet & Co., Mumtaz Kassam & Co., Dr. Mumtaz Kassam, Oyet Moses, Margaret Mutonyi;** No. 0019 (HIGH COURT OF UGANDA SITTING AT GULU, 2016): "[I]n Lopez v. Vanderwater, 620 F.2d 1229 (7th Cir. 1980) The court thus found the judge partially immune from suit. It held that he was immune for arraigning, convicting, and sentencing the tenant but not for conducting the arrest and prosecution as these were non-judicial acts committed under colour of state law. As a result of this incident, the Judge was removed from office by the Illinois Courts Commission...Vanderwater is absolutely immune from suit ....... for his acts of arraigning, convicting, and sentencing Lopez. The irregular arraignment, conviction, and sentence were not, however, the only acts of Vanderwater that proximately caused Lopez' injury. Vanderwater acted as prosecutor. He made the decision to prosecute. He determined the offense to be charged, originally contemplating criminal trespass and then deciding on theft of the key. He prepared a written charge on the "Notice to Appear" form. He caused Gamble to sign the blank complaint form and the next day had that form completed by the State's Attorney's staff. He prepared a guilty plea and waiver of jury and caused a signature, which he says was Lopez', to be placed thereon. Finally, Vanderwater presented the charge and plea form to himself with the expectation that it would be the basis for an unconstitutional conviction and sentence. These acts were not functions "normally performed by a judge." They were not, therefore, "judicial acts," and are not, as a consequence, protected by judicial immunity.

[19] **Bright v. Gallia County, Ohio;** Nos. 13-3451, 13-3907, 753 F.3d 639 (6th Cir., 2014): cIn this case, there is no debate that Judge David Dean Evans failed to meet the minimum expectations for members of the judiciary: He overreacted to attorney Robert Bright's criticisms and inappropriately removed Bright from nearly seventy felony cases. The judge's high-handed actions caused Bright great hardship, but litigation seeking to hold Judge Evans personally liable is not the solution. Generally, we rely upon the judges further up the judicial hierarchy to review and correct the rulings of lower courts."

18. The purpose to incarcerate Mr. Finney was not only because his knowledge in law, according to attorney Saurez is outstanding; because that was the only way to overcome the judicial proceeding favoring Mr. Olivieri.[20]

19. The court told Ms. Olivieri that she needed to move on from her relationship with Mr. Finney. Attorney Suarez continuously asked her if she if she understood who Mr. Finney was and what he is fighting for. Her reply was that the matter was fraud and concluded that her matter was a cover-up. Miss Olivieri then became a victim of her own retaliation.[21]

---

[20] **"Nonlawyer Legal Assistance And Access To Justice;"** Fordham Law Review Volume 67 Issue 5, Article 19 1999, Alex J. Hurder*: "In Rutherford County, Tennessee, for example, the nonlawyer court advocate of the Domestic Violence Program, Inc., assists pro se petitioners in obtaining orders of protection. ... the District Attorney General, enables the court advocate who is not a lawyer to accompany victims of domestic violence to court, to sit with them at counsel's table, and, at the discretion of the judge, to assist the court with other duties including answering docket calls and communicating relevant information to the judge.5 The role of the court advocate may be active. The court advocate helps pro se petitioners prepare petitions for orders of protection, prepares final orders and agreed orders under the supervision of the ordering judge, prepares pro se petitions for contempt, and assists victims with the preparation and filing of subpoenas for witnesses and vital records when necessary. ... When asked for assistance, the volunteers explain the procedures of Housing Court, the warranty of habitability, and other aspects of landlord-tenant law.10 The program has received much support. The local bar association, recognizing the plight of unrepresented tenants in Housing Court, supports the program."' ... Occasionally, judges even call on experienced nonlawyer volunteers from the City-Wide Task Force to summarize cases and suggest dispositions."

[21] **Bright v. Gallia County, Ohio;** Nos. 13-3451, 13-3907, 753 F.3d 639 (6th Cir., 2014): "270. See Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991) (holding that a federal court has the inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process."); Sheppard v. Maxwell, 384 U.S. 333, 357-363 (1966) (discussing a trial judge's responsibility to take measures necessary to conduct a fair trial); Link v. Wabash R.R. Co., 370 U.S. 626, 629-30 (1962) (noting the ancient origin of the power to dismiss a plaintiff's action with prejudice due to failure of the plaintiff to prosecute)."

20. The clearly established law assign liability on to the grandparents and other parties due to actions which disregard Troxel v. Granville[22] where both. Ms. Thomas' and Mr. Olivieri's parents seek to gain control of their grandchild/ren.[23] Smearing people online selling their

---

[22] **Troxel v. Granville;** 530 U.S. 57 (2000): "The Superior Court gave no weight to Granville's having assented to visitation even before the filing of any visitation petition or subsequent court intervention. The court instead rejected Granville's proposal and settled on a middle ground, ordering one weekend of visitation per month, one week in the summer, and time on both of the petitioning grandparents' birthdays. See 87 Wash. App., at 133-134, 940 P. 2d, at 699; Verbatim Report 216-221. Significantly, many other States expressly provide by statute that courts may not award visitation unless a parent has denied (or unreasonably denied) visitation to the concerned third party. See, *e. g.,* Miss. Code Ann. § 93-16-3(2)(a) (1994) (court must find that "the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child"); Ore. Rev. Stat. § 109.121(1)(a)(B) (1997) (court may award visitation if the "custodian of the child has denied the grandparent reasonable opportunity to visit the child"); R. 1. Gen. Laws §§ 15-5-24.3(a)(2)(iii)-(iv) (Supp. 1999) (court must find that parents prevented grandparent from visiting grandchild and that "there is no other way the petitioner is able to visit his or her grandchild without court intervention"). ... If a single parent who is struggling to raise a child is faced with visitation demands from a third party, the attorney's fees alone might destroy her hopes and plans for the child's future. Our system must confront more often the reality that litigation can itself be so disruptive that constitutional protection may be required; and I do not discount the possibility that in some instances the best interests of the child standard may provide insufficient protection to the parent-child relationship. We owe it to the Nation's domestic relations legal structure, however, to proceed with caution."

[23] **"An Act Concerning Registration Fees For Counsel And Guardians Ad Litem For Minor Children And Other Requirements For Certain Family Relations Matters;"** General Assembly; Raised Bill No. 1049, JANUARY SESSION, 2017 LCO No. 6106: "Sec. 6. Section 46b-56a (a) For the purposes of this section, ["joint custody"] "shared custody" means an order (1) awarding legal custody of the minor child to both parents, providing for [joint] shared decision-making by the parents on matters pertaining to the child's welfare, including, but not limited to, matters pertaining to education, medical care and emotional, moral, social and religious development, and (2) providing that physical custody shall be shared by the parents in such a way as to ... ensure that each parent exercises physical care of the child for substantial periods of time. An equal sharing of physical care and control of the child shall not be required when the court enters an award of shared custody. (b) There shall be a presumption, affecting the burden of proof, that [joint] shared custody is in the best interests of a minor child where the parents have agreed to an award of [joint] shared custody or so agree in open court at a hearing for the purpose of determining the custody of the minor child or children of the marriage. Where the parents have submitted to the court, in writing, an agreement for shared custody, such agreement shall become part of the court file and incorporated by reference into the order or decree of the court unless the court finds (1) such agreement is not in the best interests of the child, or (2) by **clear and convincing evidence,** that a parent is unfit. If the court

belongings making the lives of other people's miserable is outrageous and is shown throughout the transcripts.

21. The transcripts show the asking Mr. Olivieri if he would ever stop. Subsequently, he desired a lawyer. After multiple dismissals, Attorney Suarez[24] lacked standing and began questioning private matters, subsequent to his consent of error. The finality of what happened that commenced this suit was precluded. Thus when the court advised Attorney Saurez as to how to get around that burden "by representing the children" made the court a complaining witness,

---

declines to enter an order awarding [joint] <u>shared</u> custody pursuant to this subsection, the court shall state in its decision the reasons for denial of an award of [joint] <u>shared</u> custody. (c) **If only one parent seeks an order of [joint] <u>shared</u> custody upon a motion duly made, the court may order both parties to submit to conciliation at their own expense with the costs of such conciliation to be borne by the parties as the court directs according to each party's ability to pay.** (e) The objectives of a parental responsibility plan under this section are to provide for the child's physical care and emotional stability, to provide for the child's changing needs as the child grows and to set forth the authority and responsibility of each parent with respect to the child. (f) If both parents consent to a parental responsibility plan under this section, such plan shall be approved by the court as the custodial and access orders of the court pursuant to section 46b-56, <u>as amended by this act,</u> unless the court finds <u>(1)</u> that such plan as submitted and agreed to is not in the best interests of the child<u>, or (2) by clear and convincing evidence, that a parent is unfit.</u>"

[24] "**An Act Concerning Registration Fees For Counsel And Guardians Ad Litem For Minor Children And Other Requirements For Certain Family Relations Matters;**" General Assembly; Raised Bill No. 1049, JANUARY SESSION, 2017 LCO No. 6106: "Sec. 2. A person aggrieved by the action of counsel or a guardian ad litem for a minor child or children, appointed pursuant to section 46b-54 of the general statutes, as amended by this act, may bring a civil action seeking appropriate relief, including, but not limited to, equitable relief or damages, or both, in the superior court for the judicial district in which such counsel or guardian ad litem was appointed. If such civil action results in a judgment for the plaintiff, the court shall award the plaintiff all costs of the action, including such attorney's fees as the court may allow the plaintiff. … It shall not be a defense to such civil action that the defendant is entitled to absolute, quasi-judicial immunity."

did not undue the fact that the matter became a sham court; as is the case with Mr. Finney.[25]

Proving that money vested into the ABA gets extraordinary results.

22. The libel committed inside the family relations lobby was overheard by a stranger who was adamant about me filing suit. His name appears before Ms. Thomas. Having access to this sign in list would allow the plaintiffs to acquire this stranger and have him testify. The matter was addressed with other forms of misconduct was never objected to and never ruled or sanctioned for.

---

[25] **San Filippo v. Bongiovanni;** 30 F.3d 424 (3d Cir. 1994): "In Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064 (3d Cir. 1990), we expressly declined to reach the question whether a public employee is protected under the petition clause against retaliation for having filed a petition addressing solely a matter of private concern. See id. at 1076. We now will address that question. ...In Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)[:] Secondly, and of at least equal significance, such a construction of the Sherman Act would raise important constitutional questions. The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent … There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified."

23. Attorney Michelle Odom's[26] discussions with Mr. Finney's family members amounted to

libel.[27]

---

[26] **18 U.S. Code § 2511** - **Interception and disclosure of wire, oral, or electronic communications prohibited:** "(1) [A]ny person who—(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication … (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (v) such person acts in … any territory or possession of the United States; (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or(e)(i) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, … (ii) knowing or having reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, (iii) having obtained or received the information in connection with a criminal investigation, and (iv) with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation, shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection."

[27] **Scapin v. Scapin;** 9530 (Conn. Super. Ct. 1997): "[A]ppeals from the Family Support Magistrate Division … are taken to the Superior Court, consisting of one hundred seventy-seven judges. General Statutes §§ 46b-231 (n)(6); 51-165 (a). … Where there is a diversion of decisions by the judges, stare decisis is not instructive. While it remains true that "[u]nder the doctrine of stare decisis, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction", State v. Satti, 38 Conn. Sup. 552, 560, 454 A.2d 280 (App.Sess. 1982, Bieluch, J. dissenting), "inflexible adherence", Palmer's administrators against Mead, 7 Conn. 149, 157 (1828), to a moving standard can prove quite as "pernicious" as the "ceaseless and interminable fluctuations" that stare decisis is intended to prevent. … this court finds it appropriate to follow its own analysis and conscience. In particular, the court finds the analysis of Judge Zarella in Charette v. Charette and Family Support Magistrate Sullivan in Fleming v. Raiford to be both the most recent and the most persuasive Connecticut Law on the issue. … the defendant has failed to prove that the continued operation of the support order is inequitable or inappropriate, and further, any deviation of the existing order from the child support guidelines is also as a result of the defendant's own volitional acts. LIFSHITZ, F.S.M."

24. Attorney case through the court proceeding was taking place in chose to lie say that he had

other matters to attend to.[28]

25. Attorney Fiedler's statement that the Plaintiff has unclean hands which resulted in the

loss of his child was without questioning the basis of that false allegation.[29]

26. The evidence that aspires from not relinquishing the plaintiff's military records, prove

that the matter is unprotected and divests jurisdiction.[30]

---

[28]

[29] **Protecting the Rights of Parents and Prospective Parents with Disabilities:**
**Technical Assistance for State and Local Child Welfare Agencies and Courts under**
**Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act:"**
*U.S. Department of Health And Human Services,* Office for Civil Rights Administration for
Children and Families, *U.S. Department of Justice,* Civil Rights Division, Disability Rights
Section: "Section 504 of the Rehabilitation Act of 1973 (Section 504) and Title II of the
Americans with Disabilities Act of 1990 (ADA) protect parents and prospective parents with
disabilities from unlawful discrimination in the administration of child welfare programs,
activities, and services.[4] At the same time, child welfare agencies and courts have the
responsibility to protect children from abuse and neglect.  The goals of child welfare and
disability non-discrimination are mutually attainable and complementary. NCD concluded that
among parents with disabilities, parents with intellectual disabilities and parents with psychiatric
disabilities face the most discrimination based on stereotypes, lack of individualized
assessments, and failure to provide needed services.[7] Parents who are blind or deaf also report
significant discrimination in the custody process, as do parents with other physical
disabilities.[8] … Any case of discrimination against parents and caregivers due to their disability
is not acceptable. Two principles that are fundamental to Title II of the ADA and Section 504
are: (1) individualized treatment; and (2) full and equal opportunity.  Both of these principles are
of particular importance to the administration of child welfare programs. Individualized
treatment.  Individuals with disabilities must be treated on a case-by-case basis consistent with
facts and objective evidence.[20] Persons with disabilities may not be treated on the basis of
generalizations or stereotypes.[21] For example, prohibited treatment would include the removal of
a child from a parent with a disability based on the stereotypical belief, unsupported by an
individual assessment, that people with disabilities are unable to safely parent their children.  "

[30] **Schaefer v. O. K. Tool Co., Inc.;** 110 Conn. 528, 532-533, 148 A. 330, 332-333 (1930):
"Abuse of process is the misuse of process regularly issued to accomplish an unlawful ulterior
purpose. The gravamen of the complaint is the use of process for a purpose not justified by law.

27. The court has remained adamant in concealing a parental kidnapper. All of them knowing they have aided in this matter, the fact that the higher courts have upheld the trial court shows a lack of neutrality an individual Freedom it defraud their functionary purpose and shows that they're blind eye is only opened to those who have a lawyer.

28. The actions by the defendants in this case the lawyers and judges have been on the basis of being too poor to afford a lawyer to do the job. The Plaintiff has been unable to find on work due to Sheriff Mike Strada illegal surveillance onto Mr. Finney's LinkedIn account. Mr. Strada is jurisdiction is Sussex County, NJ, his investigation and malicious allegations of terrorism stem from the Sussex County Superior Court. The relationship between these courts is shown through Judge Mullarkey's manufactured court specifically when he stated … the Plaintiff is lucky because he is smart (the similarity is every slave to the system is poor); so more extraordinary punishments were handed down onto both Plaintiff's with the purpose of separating the peaceful assembly of the People.

29. The Probation Officer asked if Mr. Finney was affiliated with Al Qaeda. After verbally stating I was not violating 18 U.S. Code 2338, 2349 many people dropped out of the domestic violence class.[31]

---

The distinction between malicious prosecution or vexatious suit and abuse of process as tort actions is that in the former the wrongful act is the commencement of an action without legal justification, and in the latter it is in the subsequent proceedings, not in the issue of process but in its abuse. The distinction in the elements essential for recovery in each tort is that in the action for abuse of process the plaintiff is not bound to allege or prove the termination of the original proceeding nor, in most jurisdictions, the want of probable cause, while both of those must be proven in an action for malicious prosecution or vexatious suit."

[31] **United States v. DeJesus;** 116 F. Supp. 2d 256 (D.P.R. 2000): "18 U.S.C.A. § 3563(b)(6) (West Supp. 2000) (providing that a "court may provide, as further conditions of a sentence of probation, . . . that the defendant . . . refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons"). Several circuit courts have considered the interaction between § 3563(b)(6) and a defendant's constitutional rights. All of them have held that such conditions on probation do not impermissibly interfere with a

30. The Probation officer has made it clear that they have spoken to my neighbors is an illegal surveillance, since this the neighbor has destroyed the lawn twice with his truck. As Ms. Olivieri is the only person in the building with a vehicle so she would have been sued had the Plaintiff not caught the neighbor in the act and video recorded it. All of this to oppress an innocent person, so they can continue to exploit vulnerable people for their entire savings. They also have admitted that the Plaintiff has not broken the law an they stated they are attempting to free the Plaintiff from Probation in March.

31. Wheeler Clinic is the location where the domestic violence classes and court-ordered therapy is conducted. The malicious approach by this hospital was affirmed by probation officers that the hospital intended on marking the Plaintiff (like many other individuals) absent (on two accounts) to infringe on the First Amendment right, free speech, so to re-incarcerate and retake these classes, thus defrauding the financial institutions and violating their Fifth Amendment right to be free of double jeopardy.

---

defendant's constitutional rights, … as long as "the conditions bear a reasonable relationship to the goals of probation," namely rehabilitation and protection of the public. [(Inserted) **United States v. Tonry;** *605 F.2d 144 (5th Cir. 1979): Rule 35, Fed.R.Cr.P., provides in part: "The court may correct an illegal sentence at any time . . . Tonry contends that the probation condition was an abuse of discretion under the act because it is not reasonably related to his rehabilitation and to protection of the public … The statutory basis for probation, 18 U.S.C. § 3651 … Other conditions may be imposed if they are reasonably related to the rehabilitation of the probationer and protection of the public. … The Ninth Circuit has developed a test to determine whether a probation condition is unduly intrusive on constitutionally protected freedoms: The conditions must be "reasonably related" to the purposes of the Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement.*] Next, Defendant requests that the Court reconsider its order that Defendant participate in a psychological treatment program. … the Court grants Defendant's request and hereby vacates its order that Defendant participate in a psychological treatment program."

32. In the matter of Cameron's; Attorney Edward Case, their lawyer, stated he did not review the CD which contained the communications between Cameron and the plaintiff. However, the affidavit drafted was also declarated under penalty of perjury by the owner of Cameron's, Salvatore Sena. The statements are contrary to what the audiophile prove and these defendants fail to provide any proof that supports that claims. Furthermore it was a company member regardless of whether it was the owner who made the contract.[32] Because the CD file show that, "They just didn't want to do it." The CD is in the possession of the Connecticut Appellate Court. So in essence not only did their lawyer violate rule 37 but he committed perjury (the reason why the plaintiff continued to increase his damages). Furthermore showing the necessity to have a lawyer in order to be heard.

33. The correction officers who were in charge of the plaintiff are in agreement with Wheeler Clinic and the probation officer as well as the public defender's office the very improper thing is not one dispatch the State's Attorney's regarding Ms. Thomas' and Mr. Olivieri's Criminal intent.

---

[32] **Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions:** "(2) Sanctions Sought in This Court. (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)— fails to obey an order to provide or permit discovery, including an order under Rule 26(e), 35, or 37(a), the court may issue further just orders. They may include the following: (i) directing that the matter embraced in the order or other designated facts be taken as established for the purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; … (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination."

## Argument

The attempts to prevent the plaintiff from filing his grievances violating the free speech and

grievance clause pertaining[33] to the issues of Parental Kidnapping/Custodial Interference and

child exploitation.[34] The psychological evaluation was incorrectly determined to have absolute

immunity by Judge Elgo and then the Appellate Court affirmed.[35] The matter not only is false,

---

[33] **Bright v. Gallia County, Ohio;** Nos. 13-3451, 13-3907, 753 F.3d 639 (6th Cir., 2014): "Under *Mezibov v. Allen,* 411 F.3d 712 (6th Cir.2005), the First Amendment offers no protection to an attorney for his speech in court. ... The Court must not only avoid any impropriety, bias or prejudice but must avoid any appearance of such. The expressions and attitudes of Defense Counsel [Bright] as exhibited and announced in the instant motion toward this Court compromises the Court's ability to avoid any appearance of bias, prejudice, or to be fair and impartial as it relates to Defense Counsel [Bright] regardless [of] how hard it tries or what strides it makes toward guaranteeing that there would be no bias, prejudice and that it would be fair and impartial. ... As a result of these strong policy justifications for the doctrine, absolute judicial immunity can be overcome only in two instances: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles,* 502 U.S. at 11-12, 112 S.Ct. 286 ... We have stated that "[o]nly in the absence of subject matter jurisdiction are judicial actors devoid of the shield of immunity." *Hollo-way v. Brush,* 220 F.3d 767, 773 (6th Cir.2000) (en banc); *see also Barnes,* 105 F.3d at 1122 ("Generally, where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes."). And so, "[e]ven grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity." *Stern v. Mascio,* 262 F.3d 600, 607 (6th Cir.2001). **[753 F.3d 651]** The Ohio Supreme Court has stated repeatedly that "[a] trial court has the `inherent power to regulate the practice before it and protect the integrity of its proceedings ...' including the `authority and duty to see to the ethical conduct of attorneys....'"

[34] **Opiyo Joseph Otiiti v. M/S M. Oyet & Co., Mumtaz Kassam & Co., Dr. Mumtaz Kassam, Oyet Moses, Margaret Mutonyi;** No. 0019 (HIGH COURT OF UGANDA SITTING AT GULU, 2016): "The doctrine that an absolute immunity exists in respect of statements, even those defamatory and malicious, made in the course of proceedings before a court of justice, and having some relation thereto, is a principle firmly established, and is responsive to the supervening public policy that persons in such circumstances be permitted to speak and write freely without the restraint of fear of an ensuing defamation action, this sense of freedom being indispensable to the due administration of justice."

[35] **Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions** "(a) MOTION FOR ORDER COMPELLING DISCLOSURE OR DISCOVERY. (1) In General. (A) Certification of Good Faith Effort. ... The movant must accompany any motion to compel disclosure or discovery with a certification that despite a good faith effort to secure it, the disclosure or discovery material sought has not been provided. .... (4) Evasive or Incomplete

the ruling by the higher court affirms Monell liability and the lack of consideration to an

individual right to be heard minus a lawyer. This illegal union (the ABA) has been spoken of for

quite some time and in that is not what our country is founded on. It is exactly what the civil was

about.[36]

Acquiring the transcripts and all paperwork in both the New Britain Superior Court and Sussex

County Superior Court regarding matter pertaining to the Plaintiff will clearly show that the

Plaintiff in total will hold.[37]

---

Disclosure, Answer or Response. … must be treated as a failure to disclose, answer, or respond.
(5A)If the motion is granted–or if the disclosure or requested discovery is provided after the
motion was filed--the court must, after giving an opportunity to be heard, require the party or
deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or
both to pay the movant's reasonable expenses incurred in making the motion, including
attorney's fees."

[36] **"Nonlawyer Legal Assistance And Access To Justice;"** Fordham Law Review Volume 67
Issue 5, Article 19 1999, Alex J. Hurder*: "For instance, misuse of the discovery powers by a
representative whose interests conflict with those of litigant might result in invading the privacy
of others for reasons not justified by the strategy of the case. The judiciary's interest in limiting
its power to resolve disputes … [t]he adversary system places considerable reliance on litigants
and their representatives to develop the facts of their cases, to research the law, and to frame
issues for courts to decide. … Thus, the ethical rules imposed by courts on lawyers protect the
courts as well as the public. The ethical requirements of confidentiality, 22 8 candor, 229
competence and loyalty231 provide important protections for parties and for courts. ... In
NAACP v. Button, 371 U.S. 415 (1963), Justice Harlan wrote in dissent: The State has sought to
prohibit the solicitation and sponsoring of litigation by those who have no standing to initiate
that litigation themselves and who are not simply coming to the assistance of indigent litigants.
Thus the state policy is not unrelated to the federal rules of standing-the insistence that federal
court litigants be confined to those who can demonstrate a pressing personal need for relief. ...
See Sperry v. Florida ex rel. Fla. Bar, 373 U.S. 379, 384-85 (1963) (holding that the federal
statute that permits nonlawyer patent agents to represent parties before the U.S. Patent Office
preempts state rules prohibiting unauthorized practice of law.) 257. New York State Bar Ass'n,
Guidelines for the Utilization by Lawyers of the Services of Legal Assistants 42 (1997)."

[37] **"An Act Concerning Registration Fees For Counsel And Guardians Ad Litem For Minor
Children And Other Requirement For Certain Family Relations Matters;"** General
Assembly; Raised Bill No. 1049, JANUARY SESSION, 2017 LCO No. 6106: "(5) the past and
current interaction and relationship of the child with each parent, the child's siblings and any

The state becomes liable because even bringing the matter before a higher Court. In Candor plaintiff still have not received Justice rather. The court loyal to its own judges and judicial officers. As opposed to being loyal to the rule of law. Affirmed in a per curiam Manner and can not address why. By granting this motion the Plaintiff can also begin to feel at peace with himself, feel that Our Crown Jewels remain loyal to us rather than to the same type of slave owners we all left behind/traded sides from. That is why the Plaintiff requests that this court scare the sickens out of these courts, because they sit back snuggly enjoying the horror they bring onto innocent people… a taste of their own medicine upon the administrators of these courts.

Both Mr. Olivieri and Ms. Thomas have blatantly, and the presence of the judges involved, shown humor at what is taking place by laughing, winking, and with there smug facial

---

other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided counsel or a guardian ad litem for the minor child may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether a party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b."

expressions. This is not the conduct of those who are terrorized or concerned for the interests of their child/ren. It shows they are aware of their favoritism.

Sanctions are called on due to the failure to uphold discovery,[38] the lack of evidence that solidifies there allegations. The fact that they have no proof to support there positions, the lack of defense in the high courts, after being told to comply still received a favorable outcome for the defendants is contrary to how a proper judicial proceeding is conducted. Therefore improper rulings in this context show nonadherence to any aspect of due process. Furthermore, because every matter discussed as led to a dismissal, an award of shared and equal/fair custody plan is nothing more than malicious and vexatious litigation.

Jurisdiction is the authority to hear and rule on a "real" dispute. The Plaintiff has shown, and given the evidence to prove, jurisdiction belonged to the Appellate court and the Plaintiff and Me. Olivieri should have received favorable rulings, this has not been the case. Nor has the

---

[38] **Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions** "(d) PARTY'S FAILURE TO ATTEND ITS OWN DEPOSITION, SERVE ANSWER TO INTERROGATORIES, OR RESPOND TO A REQUEST FOR INSPECTION. (1) In General. (A) Motion; Grounds for Sanctions. The court may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with a proper notice, to appear for that person's deposition; or (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve answers, objections, or a written response. (B) Certification. A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action. (2) Unacceptable Excuse for Failing to Act. A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c). (3) Types of Sanctions. Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."

higher courts made fair and impartial rulings. In that, the district court have always been the proper venue to bring forth a cause of action. Because the courts should give a pro se victim a justified amount of leniency, failure to state a controlling cause of action should not have caused a dismissal. What should have happened was the deployment of the U.S. Marshals upon the corrupt court which The People seek.

<Speaking in individual capacity>I have lived with Ms. Olivieri for over 2 years. She loves her children and I have never seen her hurt her children. Since she has gotten them back the children have shown growing resentment every time they leave her.

I lost my temper a few times in my relationship with Ms. Thomas. What I said should be taken in the same context "I love Lucy." I loved Ms. Thomas, I protected and cherished her not only as the mother of my daughter, but as my best friend. I am wrong for what I said, and I apologized immediately there after. Nothing here rises to level of aggression that gives right to allow a child to be denied the other parent. Nothing here gives right to steal and or sabotage someone else's belongings, that is purely to maintain power over and down right vindictive.[39] These actions have

---

[39] **"Nonlawyer Legal Assistance And Access To Justice;"** Fordham Law Review Volume 67 Issue 5, Article 19 1999, Alex J. Hurder*: "The Court also recognized a "paramount" interest in protecting the legal system by preventing actions that "negatively affec[t] the administration of justice.""' Indeed, the Court noted that the administration of justice was damaged by "the erosion of confidence in the profession that such [solicitations] have engendered."' ... [T]he Court has shifted the focus away from the governmental interest in protecting the public which includes protecting the public from shoddy work, invasion of privacy, undue influence, deception, fraud, and overreaching to the governmental interest in the operation of the legal system-which has included measures the courts have cited to preserve confidence in the legal profession, protect the attorney-client relationship, license and supervise lawyers in their role as officers of the courts, assure the economic viability of the bar, and maintain the moral and ethical fabric of the administration of justice. ... The most imperative requirements of the operation of the judiciary are derived from the Constitution and the historical understanding of the role of adjudication in our system of government.155 Courts exercise judicial power by making judgments and issuing orders in cases before them. They also exercise judicial power by making law through the precedential effect of their decisions.15 6 The doctrine of stare decisis in both federal and state

hurt our families and our friends. The court of emergency jurisdiction, at that specific time, when

the emotions were high was told by Ms. Thomas that there is no issue and that they would work

everything out. We both tried this, things got worse; we left and never went back.[40]

The matter cannot be fairly litigated without access to raw and complete documents.[41]

---

courts ensures that these decisions will not only determine the conduct of the parties to a
particular case, but will also influence the conduct of others in similar situations."

[40] **Santos E. Argueta v. Tami A. Baker;** 2016 NY Slip Op 01838 [137 AD3d 1020], N.Y. APP.
2ND Div., 2016: "Interference with visitation rights can be the basis for suspension of child
support, but such relief is warranted only where the custodial parent's actions rise to the level of
" 'deliberate frustration' " or " 'active interference' " with the noncustodial parent's visitation rights
(*Ledgin v Ledgin*, 36 AD3d 669, 670 [2007], quoting *Weinreich v Weinreich*, 184 AD2d 505,
506 [1992]). Here, the father demonstrated that the mother actively interfered with and
deliberately frustrated his visitation with the child by, inter alia, failing to provide him with the
child's Florida address, preventing him from seeing the child when he was in Florida, and failing
to notify him when the child was in New York. Therefore, the Family Court should have granted
that branch of the petition which was to suspend the father's child support obligation."

[41] **Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions** "(c)
FAILURE TO DISCLOSE, TO SUPPLEMENT AN EARLIER RESPONSE, OR TO ADMIT.
(1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness
as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to
supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially
justified or is harmless. In addition to or instead of this sanction, the court, on motion and after
giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including
attorney's fees, caused by the failure; and (B) may impose other appropriate sanctions, including
any of the orders listed in Rule 37(b)(2)(A)(i) – (vi). (2) Failure to Admit. If a party fails to admit
what is requested under Rule 36 and if the requesting party later proves a document to be
genuine or the matter true, the requesting party may move that the party who failed to admit pay
the reasonable expenses, including attorney's fees, incurred in making that proof. The court must
so order unless: (A) the request was held objectionable under Rule 36(a); (B) the admission
sought was of no substantial importance; (C) the party failing to admit had a reasonable ground
to believe that it might prevail on the matter; or (D) there was other good reason for the failure to
admit. … COMMENT TO 2018 AMENDMENTS The rule has been amended to conform to
Civil Rule 37. Subsection (a)(1)(C)(iii) has been added because one self-represented party may
be subject to a stay-away order that precludes an in-person meeting about discovery issue. … In
subparagraph (a)(4), the phrase "after affording an opportunity to be heard" is intended to make
it clear that the Court may award expenses or impose other sanctions for a party's failure to
disclose, answer, or respond to a discovery request after consideration of written submissions, or
after a hearing."

Res Judicata and Collateral Estoppel are Fifth Amendment privileges for the Defendant they do not bar the issuer.

It is ironic to know that Shirley Thomas not only is connected to Stephen Cohen's gun club but does work with Connecticut shotgun, located in New Britain, CT.[42]

Objections regarding immunity are nullified in the official and corporate capacity the outrageousness justifies piercing the corporate veil.

## CONCLUSION

The Plaintiffs asked that this motion for discovery, a cease and desist, and sanctions, in the form and akin to the award of lawyer's fees be granted.[43]

---

[42] **"Nonlawyer Legal Assistance And Access To Justice;"** Fordham Law Review Volume 67 Issue 5, Article 19 1999, Alex J. Hurder*: "The doctrine of standing sets the boundaries for individual access to the courts by determining who is a proper party to invoke the power of the court. 66 Once the litigants meet the case and controversy requirements, they have access to remarkable powers within the legal system. ... The 1960s and 1970s also saw increased legal advocacy on behalf of poor persons. 18 3 The victories in cases brought by minorities and disadvantaged persons opened the courts as a source of relief for injustices and, at the same time, created a greater need for lawyers to enforce legislation and constitutional rights.'184 The success of the NAACP litigation strategy that culminated in Brown v. Board of Education 18 5 led to lawsuits by racial minorities challenging racial segregation throughout the country. 186 President Lyndon Johnson's War on Poverty embraced legal advocacy as part of its strategy to combat poverty." ...  Legal interests entitled to judicial protection from unlawful deprivation include rights to housing, health care, education, nutrition, and income maintenance for persons with disabilities and the unemployed.'"

[43] **"Nonlawyer Legal Assistance And Access To Justice;"** Fordham Law Review Volume 67 Issue 5, Article 19 1999, Alex J. Hurder*: "NONLAWYER legal assistance is a necessary ingredient of any plan for meaningful access to the courts. The American Bar Association Commission on Nonlawyer Practice found in 1995 "that as many as 70% to 80% or more of low-income persons are unable to obtain legal assistance even when they need and want it."' ... While low income households have the greatest problems of access ... many moderate-income households, as well, do not have access to the justice system. ... These needs become clear when examining two related aspects of the legal system: the judiciary's need to control the exercise of judicial power and the need for judicial accessibility to individuals. ... As a result, courts have a

corresponding need to ensure access for those individuals with standing to bring cases of all types. … This Article contends that the ethical obligations of confidentiality, candor, competence, and loyalty imposed on lawyers by the courts contribute to the orderly operation of the legal system.33 It also suggests that courts have a duty to exercise heightened care when litigants without lawyers rely on assistance from nonlawyers who are not subject to the ethical obligations imposed by the courts. … Because the First and Fourteenth Amendments protect some of the specific law-related activities engaged in by nonlawyers, regulation of nonlawyer activities devised by legislative and executive agencies is subject to judicial review to guarantee compliance with constitutional mandates."

### 4. Substantive-Due-Process Claim

[753 F.3d 658]

The cases that Bright cites in his briefing do not support a third, unaddressed claim, and to the extent that Bright argues that his position as an attorney affords him greater First Amendment rights, *Mezibov* holds the opposite. *See* 411 F.3d at 719 ("[I]n finding no First Amendment rights on the part of the attorney participating in a judicial proceeding, we are simply re-affirming the commonsense principle that attorneys do not possess `any right in the first amendment that is not the common legacy of every citizen.'" (quoting *Ukrainian-American Bar Ass'n v. Baker,* 893 F.2d 1374, 1381 (D.C.Cir.1990))).

In part, he is correct: "This Court has long held that the freedom to choose and pursue a career, to engage in any of the common occupations of life, qualifies as a liberty interest which may not be arbitrarily denied by the State." *Parate v. Isibor,* 868 F.2d 821, 831 (6th Cir.1989) (internal quotation marks omitted). More specifically, the Supreme Court has stated that "[a] State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause[s] of the Fourteenth Amendment." *Schware v. Board of Bar Exam. of N. Mex.,* 353 U.S. 232, 238-39, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957) (citing *Dent v. West Virginia,* 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889))..

### 5. Collusion with Judge Evans

Bright's final § 1983 claim is that the Corporation directly participated in Judge Evans's alleged violation of Bright's federal rights. The district court rejected this claim, finding that the Corporation had no supervisory relationship over Judge Evans. R. 52 at 16 (D. Ct. Order Granting Corp. Mot. to Dismiss) (Page ID #534). In doing so, the district court overstated the caselaw, given that a supervisory relationship is not always required to state a valid claim. *See Flagg v. City of Detroit,* 715 F.3d 165, 174 (6th Cir.2013) ("[F]or constitutional violations under § 1983, a **[753 F.3d 659]** plaintiff must demonstrate that the actor `directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct

The Supreme Court has long recognized the conflict between rules banning unauthorized practice of law and the First Amendment guarantees of freedom of speech, association, and petition of government for redress of grievances.4' Early cases rejected the arguments of state bar associations that the governmental interest in protecting the public from harm justified broad bans on speech and collective activity aimed at gaining access to the courts. ... the Court has held that organizations with primarily political and social purposes have a fundamental right to engage in speech and cooperative activities aimed at facilitating access to the courts for individuals with legitimate claims.... [T]he Court found that the right of the workers personally or through a special department of their Brotherhood to advise concerning the need for legal assistance-and, most importantly, what lawyer a member could confidently rely on-is an inseparable part of this constitutionally guaranteed right to assist and advise each other.68

...

**Rule 37. Failure to Make Disclosures or to Cooperate in Discovery;** Sanctions (a) MOTION FOR ORDER COMPELLING DISCLOSURE OR DISCOVERY. (1) In General. (A) Certification of Good Faith Effort. ... The movant must accompany any motion to compel disclosure or discovery with a certification that despite a good faith effort to secure it, the disclosure or discovery material sought has not been provided. .... (4) Evasive or Incomplete Disclosure, Answer or Response. ... must be treated as a failure to disclose, answer, or respond. (5A)If the motion is granted–or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

(b) FAILURE TO COMPLY WITH A COURT ORDER. (1) Sanctions Sought in the Jurisdiction Where the Deposition Is Taken. If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court. If a deposition-related motion is transferred to the court where the action is pending, and that court orders a deponent to be sworn or to answer a question and the

deponent fails to obey, the failure may be treated as contempt of either the court where the discovery is taken or the court where the action is pending.

 (C) Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.